IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAKOTA FINANCIAL, LLC,

    Plaintiff,

v.                                Civil Action No. PX 16-881

DALLAS TRUCKING, LLC and
ANTONIE ROBINSON

    Defendants.

\*\*\*\*\*\*

**MEMORANDUM OPINION**

Pending in this case is Plaintiff's Motion for Default Judgment. ECF No. 19. The issues have been fully briefed and a hearing was held on Wednesday, September 7, 2016, with supplemental briefing to follow. ECF No. 26. For the following reasons, Plaintiff's motion is granted.

**I.    BACKGROUND**

On October 17, 2014, Plaintiff Dakota Financial ("Dakota") entered into a finance lease agreement with Defendant Dallas Trucking, LLC ("Dallas") whereby Dakota agreed to lease to Dallas a 2005 Mack Granite CV713 Tri-Axle Dump Truck, Vehicle Identification Number 1M1AG11Y35M018941 (the "Equipment").[1] ECF No. 1 at 2; ECF No. 1-2. According to the terms of the lease agreement, Dallas was required to pay monthly installments of $2,737 to Dakota for forty-two months. Defendant Antonie Robinson signed as the guarantor of the lease, unconditionally guaranteeing, among other things, "the due and punctual payment and performance by [Dallas] of all Obligations" and "promis[ing] to pay all Obligations under the terms of the Lease." ECF No. 1-3. On March 23, 2016, Dakota filed a Complaint against Dallas

---

[1] Apparently, Dakota also leased a 2001 Mack Granite Dump Truck to Dallas, which was eventually repossessed and sold at auction. ECF No. 22-1 at 16–20.

1

and Robinson (collectively, "Defendants"), alleging that Dallas breached the terms of the finance lease by failing to make timely payments. Robinson likewise breached the lease agreement and also breached the guaranty agreement for his failure to make the necessary payments after Dallas defaulted on its obligations. Dakota also requested a writ of replevin for the immediate seizure and delivery of the truck back to Dakota. ECF No. 1 at 5–6. On June 13, 2016, the Clerk entered an Order of Default against the Defendants for failure to plead or otherwise defendant against the Complaint within the time allowed. ECF No. 18.

On August 4, 2016, Dakota filed the pending Motion for Entry of Default Judgment, asking this Court to "[e]nter judgment by default, jointly and severally, against defendants Dallas Trucking, LLC and Antione Robinson, in the total amount of $83,138.76, plus attorneys' fees, with post-judgement interest at the legal rate until the judgment is fully paid." ECF No. 19 at 3. Dakota also requested the Court award possession of the Truck to Dakota and award Dakota "damages for the wrongful detention of the Equipment, . . . and enter judgment in Dakota's favor and against Defendant Dallas Trucking, LLC, in the amount of $25,000." *Id.*

## II.   ANALYSIS

### A.   Default Judgment

Rule 55(b) of the Federal Rules of Civil Procedure governs default judgments. Rule 55(b)(1) provides that the clerk may enter a default judgment if the plaintiff's claim is "for a sum certain or a sum that can be made certain by computation." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *See Medunic v. Lederer*, 64 F.R.D. 403, 405 n.7 (E.D. Pa. 1974) (concluding that clerk could not enter default

judgment where damages were not liquidated), *rev'd on other grounds*, 533 F.2d 891 (3d Cir. 1976). If the sum is not certain or ascertainable through computation, Rule 55(b)(2) provides:

> [T]he party must apply to the court for a default judgment . . . . The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or investigate any other matter.

As the Court noted in *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006), this Circuit maintains a "strong policy that cases be decided on the merits." *Id.* (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)). But where the "adversary process has been halted because of an essentially unresponsive party," default judgment is an appropriate vehicle to resolve the case. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

In determining whether to award a default judgment, the Court will take as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("'The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'") (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *see* Fed. R. Civ. P. 8(b)(6). However, "[a] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *DIRECTV, Inc. v. Pernites*, 200 F. App'x 257, 258 (4th Cir. 2006) (quoting *Nishimatsu*, 515 F.2d at 1206). It remains "for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action." *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D.

3

Md. 2010); 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2688 (3d ed. 1998) ("[L]iability is not deemed established simply because of the default and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

Defendants were served with copies of the Complaint in April 2016 and failed to respond. Thus, all of Dakota's allegations—other than those pertaining to damages—are deemed admitted. Fed. R. Civ. P. 8(b)(6). Dakota moved for entry of default on June 8, 2016 and the Clerk of the Court entered an Order of Default June 13, 2016. Neither defendant responded to Dakota's motion or moved to set aside the Order. Thus, this Court will exercise its discretion to grant default judgment when a defendant is unresponsive. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987) (upholding a default judgment when the defendant lost its summons and did not respond within the proper period); *Disney Enters.*, 446 F. Supp. 2d at 405–06 (holding that entry of default judgment was proper because defendant had been properly served with complaint and did not respond, even after plaintiffs tried repeatedly to contact him).

To establish Defendants' liability for breach of contract under the lease agreement, breach of contract under the guaranty agreement, and request for writ of replevin, Dakota attaches the affidavit of Tony Sedlack, a vice president and portfolio manager of Dakota. ECF No. 19-1. A sufficient affidavit typically includes supporting documents and/or an explanation of how the affiant reached any figures provided. *Hartford Financial Services Group, Inc. v. Carl J. Meil, Jr., Inc.*, No. WDQ–10–2720, 2011 WL 1743177, at *8 (D. Md. May 5, 2011). Here, Sedlack's affidavit, along with the contracts attached to the Complaint and the supplemental exhibits provided to the Court with respect to damages, clearly establish that the Defendants did not meet their contractual obligations. As Sedlack notes, the lease agreement required Dallas to

make its lease payments when due and Robinson guaranteed that Dallas would fulfill its end of the bargain. ECF No. 19-1; ECF No. 1-2; ECF No. 1-3. Neither Dallas nor Robinson made the scheduled lease payments and, pursuant to the lease agreement, Dakota accelerated the balance owed. *See* ECF No. 1-2 at 7 ("Upon the occurrence of any Event of Default . . . Lessor in its sole discretion shall elect . . . [to] declare the entire balance of rent for the remaining Term to be immediately due and payable and recover such rent and all other rent and sums due hereunder."). The Billing Detail Report, ECF No. 23-1, shows that Dallas stopped making payments in May 2015 with approximately three years left on the lease. After failing to pay as due in June and July, 2015, Dakota accelerated all future payments. Therefore, Defendants' liability is established, and Plaintiffs' Motion for Default Judgment is granted.

**B.   Damages**

Although liability has been established, an allegation "relating to the amount of damages" is not deemed admitted based on a defendant's failure to deny in a required responsive pleading. Fed. R. Civ. P. 8(b)(6); *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, No. DKC–08–2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."). Therefore, with respect to a default judgment, "[c]laims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed." *U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F. Supp. 2d 314, 318 (E.D.N.Y. 2007); *see Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (same). Yet, the Court may award damages without a hearing if the record supports the damages requested. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding

that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment was entered against defendant because plaintiff submitted affidavits and printouts of electronic records establishing the amount of damages it sought); *see also Virgin Records Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 (S.D. Ala. 2007) (noting that an entry of default judgment "in no way obviates the need for determinations of the amount and character of damages," but an evidentiary hearing is not required if "all essential evidence is already of record").

In its Motion to Enter Default Judgment, Dakota sought damages totaling $83,128.76 as a result of Defendants' failure to perform their obligations under the lease agreement. As fully explained in the Court's Letter Order issued on August 15, 2015, however, the Court determined that the record then established did not demonstrate how Dakota arrived at its figure, and did not convince the Court that its damages calculation was accurate, reliable, and verified. *See* ECF No. 21. The Court ordered Dakota to provide supportive documentation establishing the amount of damages sought. Dakota promptly obliged. ECF No. 23. The Court also conducted a hearing to discuss the damages issue on September 7, 2016. Counsel for Dakota was present and the Defendants failed to appear.

At the September 7th hearing, the Court and counsel for Dakota noted that while the record is now complete with respect to damages, miscalculations remained. Pursuant to the Court's instructions, Dakota submitted a Supplemental Memorandum in Support of its Motion to Enter Default Judgment on September 14, 2016. ECF No. 26. With this additional information, the record with respect to damages is now complete and accurate. Dakota's damages include a partial past due payment for May 2015 of $230.28 and past due payments for June and July 2015 totaling $5,474. Pursuant to paragraph 16 of the lease agreement, Dakota accelerated the

remaining thirty-four monthly payments. These payments, at $2,737 each, total $93,058. Dakota next took the net present value of the accelerated payments at discount rate of .75%, consequently reducing the payment amount by $697.35. Dallas also incurred late charges, nonsufficient funds fees, and unpaid tolls all totaling $2,308.83. Because Dallas is ostensibly still in possession of the truck, Dakota inserted the $15,000 purchase option payment into its damages calculation. But as Dakota explains in its supplemental memorandum, Dakota uses this value for the purposes of the writ of detinue. Should Dakota locate, take possession of, and sell the truck in question for greater than $15,000, it shall credit any such surplus toward any money judgment entered in favor of Dakota and against the Defendants in this action. *See* ECF No. 26 at 2. Dallas is also responsible for the $3,095[2] cost of repossessing, storing, and delivery of the 2001 Mack Granite Dump Truck, which is the second truck Dallas leased Dakota. Lastly, Dakota deducted Dallas's security deposit and the proceeds from the sale of the repossessed 2001 Mack Truck, totaling $34,580. Excluding legal fees and expenses, Dallas's damage total comes to $83,888.76. The Court will award Dakota this amount, plus interest at the legal rate.

**C.   Detinue**

Pursuant to Md. Rule 12–601(h), "[a]fter the issue of the right to possession before judgment is determined, the action shall proceed as an action for recovery of property after judgment under Rule 12–602." *See Wallander v. Barnes*, 341 Md. 553, 572 (1996) ("Modern replevin in Maryland is a pre-judgment, but post-probable cause determination, seizure."). Rule 12–602, entitled "Recovery of Property or Value after Judgment—Detinue," provides, in turn, that "[a] judgment for the plaintiff shall award possession of the property or, in the alternative, payment of its value." Md. Rule 12–602(d)(1). Such judgment must "separately set forth the

---

[2] This cost was originally reported by Dakota as $2,345. Dakota admits it miscalculated this figure and that it is instead $3,095.

value of the property and any amount awarded for damage to or detention of the property." *Id.* Pursuant to Md.Code Ann., Cts. & Jud. Proc. § 11–104(a), "[i]n an action of detinue a plaintiff may recover the personal property and damages for the wrongful detention of the property."

As previously stated, the Court determines that the Defendants have unjustly detained the Equipment. Dakota values the Equipment at $15,000 because it is the value the parties agreed to at the time financing was provided. Accordingly, the Defendants will be ordered to the 2005 Mack Granite CV713 Tri-Axle Dump Truck, Vehicle Identification Number 1M1AG11Y35M018941 )(ostensibly still in Defendants' possession), to Plaintiff Dakota.

### D. Attorney's Fees and Costs

Dakota hired Leitess Friedberg PC as its counsel in this matter. Dakota has indicated that, pursuant to Local Rule 109.2, it will file a motion and memorandum for an award of attorney's fees in the event that the Court enters judgment in this case. Dakota's counsel shall provide, within fourteen (14) days of this Memorandum and Order, a complete explanation and calculation of the reasonable attorney's fees and associated costs that Plaintiffs are seeking. Any opposition to the motion shall be filed within fourteen (14) days of service of this memorandum.

## III. CONCLUSION

Plaintiff's Motion for Entry of Default Judgment against Defendants is GRANTED. Judgment is entered against Defendants Dallas Trucking, LLC and Dallas Trucking, LLC, jointly and severally, in the amount of $83,888.76 plus post-judgment interest at the legal rate in accordance with 28 U.S.C. § 1961.

Plaintiff's counsel is ordered to provide, within fourteen (14) days of this Memorandum and Order, a complete explanation and calculation of the reasonable attorney's fees and

associated costs that Plaintiff is seeking. Defendants will have fourteen (14) days to respond. A separate order follows.

| | |
|---|---|
| 9/19/2016 | /S/ |
| Date | Paula Xinis |
| | United States District Judge |